UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ART SMALL, | ) | |
| LYNETTE SMALL, | ) | |
| EXECUTIVES, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-01605-TAB-SEB |
| | ) | |
| THE ANCHORAGE HOMEOWNERS | ) | |
| ASSOCIATION, LLC, | ) | |
| TRUDY JOHNSON, | ) | |
| F. BRADFORD JOHNSON, | ) | |
| SGA ENTERPRISES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

### I.  Introduction

At issue are Defendants' motions to dismiss.  [Filing Nos. 38, 40, and 42.]  Plaintiffs Art Small, Lynette Small, and Executives, LLC, allege Defendants Trudy and F. Bradford Johnson conspired with Defendant The Anchorage Homeowners Association, LLC, to constructively evict the Smalls.  In sum, Plaintiffs allege "[t]he Johnsons, with the active support and participation of [the AHOA], embarked on a campaign of constructive eviction, which included directly and indirectly harassing the Smalls, with the intention of removing the Smalls from [their home]" because the Johnsons "perceived [the Smalls] to be Jewish."  [Filing No. 35, at ECF p. 4, ¶¶ 15, 18.]  Plaintiffs contend that in this campaign, the Johnsons and the AHOA violated the Fair Housing Act and committed other wrongs under Indiana law.  Specifically, Plaintiffs allege the Johnsons erected a "spite fence," tortiously interfered with their quiet enjoyment of the property, and defamed Mr. Small.  Plaintiffs further allege that Defendant SGA

Enterprises, Inc., as Ms. Johnson's employer, is vicariously liable for her defamatory statements, and that the AHOA failed to turn over records to which the Smalls are entitled.

Each Defendant asserts Plaintiffs' complaint fails to state a claim upon which relief may be granted. In addition, the AHOA argues Plaintiffs failed to properly serve process on it, so the Court lacks jurisdiction. The Johnsons argue that Plaintiffs fail to meet their pleading burden under any of the four provisions of the FHA on which Plaintiffs base their federal claims, 42 U.S.C. §§ 3604(a), 3604(b), 3604(c), and 3617. The Johnsons contend those FHA provisions generally apply to pre-acquisition discrimination, and only apply to post-acquisition conduct in narrow, extreme circumstances that are not present here. By the Johnsons' reckoning, Plaintiffs are trying to make a federal case out of a simple neighborly quarrel. As for the state law claims, the Johnsons argue Plaintiffs either fail to meet their pleading burdens or fail to establish the existence of the cause of action. SGA's position is that Plaintiffs fail to allege the necessary elements of *respondeat superior* in order for it to be vicariously liable for Ms. Johnson's alleged actions.

Though the Court accepts as true all plausibly pleaded facts and draws all reasonable inferences in Plaintiffs' favor, *Teamsters Loc. Union No. 705 v. Burlington N. Santa Fe, LLC, 741 F.3d 819, 823 (7th Cir. 2014)*, the majority of Plaintiffs' claims fail to state grounds on which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court grants the AHOA's motion [Filing No. 42] because the Court lacks personal jurisdiction over it. Likewise, the Court grants SGA's motion [Filing No. 38] because Plaintiffs fail to plead facts that could sustain vicarious liability. However, one claim survives, and the Johnsons' motion [Filing No. 40] is granted in part and denied in part. As explained below, the insufficiently pleaded claims are dismissed without prejudice. If Plaintiffs can do so within the limitations of Rule 11(b),

Plaintiffs may file an amended complaint to address the shortcomings outlined below, but they must do so within 14 days.

## II.     Background

Executives, which Ms. Small owns, purchased the property at 10396 Treeline Court, Fishers, Indiana, in May of 2015, and the Smalls moved in. When Executives purchased the 10396 property, it was subject to covenants and restrictions, including the AHOA's rules. The Johnsons are the Small's next-door neighbors. Mr. Johnson is an attorney and Ms. Johnson was a licensed real estate agent when the alleged acts occurred.

According to Plaintiffs, the Johnsons were rude to the Smalls from the beginning and went out of their way to make the Smalls feel unwelcome because the Johnsons "perceived that the Smalls were renters . . . and that the Smalls are Jewish." [Filing No. 35, at ECF p. 4, ¶ 14.] Plaintiffs allege the AHOA actively supported and participated in the Johnsons' efforts, which amount to constructive eviction. The alleged campaign began in July 2015, when the Johnsons used stakes to mark the boundary of their property that borders the 10396 property. Later that July, the Johnsons made the demarcation even more unsightly by adding a rope that stretched the entire length of the east side of the Johnson's property. In September, the AHOA notified the Smalls that the Johnsons had complained to the AHOA about some landscaping stone in the yard of the 10396 property. Plaintiffs allege this not only continued the Johnson's campaign, but is also the point at which the AHOA joined it.

Plaintiffs assert the Johnsons' next effort in their campaign to constructively evict the Smalls was to attempt to amend the covenants and restrictions of the AHOA to prohibit renters. Plaintiffs claim the Johnsons thought the Smalls were renters, so banning renting would force out the Smalls. The amendments were discussed at a special AHOA meeting in December 2015.

However, Plaintiffs do not allege the AHOA adopted any rental restrictions, and the complaint does not include the result of the discussions at the special AHOA meeting. The Johnsons' next effort, Plaintiffs claim, was to complain to the AHOA that the Smalls had suspicious cars parked at the 10396 property, and Ms. Johnson even complained to the Fishers police. The AHOA's president informed the Smalls of the complaint, exchanging emails with the Smalls in early May of 2016.

Plaintiffs allege things took an overtly anti-Semitic turn on May 28, 2016. Mr. Small was working in his yard with two African-American friends and potential clients when he attempted to start a friendly conversation with Ms. Johnson. Mr. Small claims Ms. Johnson responded by "accus[ing] him of begin a racist, of engaging in Fair Housing Act violations, and repeatedly called him an extremely offensive anti-[S]em[i]tic slur ('Jew Face') in front of his friends and potential clients." [Filing No. 35, at ECF pp. 4-5, ¶ 21.] Mr. Small further claims that, during this exchange, Mr. Johnson physically threatened him. A few days later, the Johnsons installed a "large wooden wall" with the AHOA's approval. [Id. at ECF p. 5, ¶ 22.] The wall obstructs the Smalls' view, which they assert interferes with their enjoyment of the 10396 property. Plaintiffs further contend the AHOA approved the wall despite the fact that it does not comply with AHOA and Hamilton County restrictions.

Mr. Small claims he contacted the AHOA regarding the proposed renting restriction, the May 28 incident, and the wall. Mr. Small requested the AHOA board look at the wall and provide him with "[a]ll documents, phone logs, emails, faxes, minutes or notes of any meetings and/or discussion, and correspondence of any and all kind between [the AHOA], officers, residen[ts], general public, members, committees, and/or any of [his] family and/or any company

[his family is] associated with." [*Id.* at ¶ 24.]  The AHOA did not provide unredacted copies of the requested information.

## III.    Discussion

### a.   Jurisdiction

The Court dismisses Plaintiffs' claims against the AHOA because Plaintiffs failed to properly serve that entity.  Federal courts lack personal jurisdiction over defendants that are not properly served with a summons.  *Mid-Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 299-300 (7th Cir. 1991).  Because the AHOA is an LLC, service of the summons may be completed "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant."  Fed. R. Civ. P. 4(h)(1)(B).  Federal courts also permit service of the summons according to state rules.  Fed. R. Civ. P. 4(h)(1)(A) (citing Fed. R. Civ. P. 4(e)(1)).  The relevant Indiana rule permits service of an LLC by serving "an executive officer thereof, or if there is an agent appointed or deemed by law to have been appointed to receive service, then upon such agent."  Ind. R. Civ. P. 4.6(A)(1).  Plaintiffs failed to serve an officer or authorized service agent of the AHOA.  Rather, they served attorney Peggy Little, who is not an executive of the AHOA, not authorized to receive service on the AHOA, and is not a registered service agent of the AHOA.

Plaintiffs' service on Little is insufficient.  Failure to serve a summons cannot be overcome by the defendant's actual knowledge of the suit, the plaintiff's substantial compliance via diligent attempts to serve, or equitable considerations, absent clear examples of evasion.  *Mid-Continent*, 936 F.2d at 300-03.  The Seventh Circuit specifically noted in *Mid-Continent*

that serving a defendant's non-agent lawyer does not satisfy Rule 4, even when that attorney participates in out-of-court settlement discussions with the plaintiff. *Id.* at 301 (discussing facts and affirming outcome of *Bennett v. Circus U.S.A.*, 108 F.R.D. 142, 148 (1985)). Plaintiffs are not saved by the fact that the AHOA obviously knows about this litigation or the fact they merely served the wrong attorney. Little happens to represent the AHOA in some matters, including this one, but she lacks the authority to accept service on behalf of the AHOA.

The AHOA did not waive its lack of personal jurisdiction defense. Defendants waive personal jurisdiction if they fail to assert the defense in their first responsive pleading or by making substantive arguments without pressing the lack of jurisdiction argument. *Blockowicz v. Williams*, 630 F.3d 563, 566 (7th Cir. 2010). The AHOA did not file an answer to Plaintiffs' initial complaint, and have not filed one for Plaintiffs' amended complaint. The AHOA asserted the defense that the Court lacks personal jurisdiction in its motion to dismiss following Plaintiffs' initial complaint. [Filing No. 23, at ECF pp. 8, 13-14.] The AHOA's attorney appeared for a pretrial conference, but asserted the appearance served only to assert the lack of personal jurisdiction defense and other Rule 12 defenses, so it was not a waiver. [*See* Filing No. 43, at ECF p. 8.] In its instant motion to dismiss, the AHOA presented lack of personal jurisdiction as its first argument for dismissal under Rule 12. [*Id.*] The fact that the AHOA also addressed the merits of Plaintiffs' claims does not operate as a waiver of its lack of personal jurisdiction argument. *Compare* Fed. R. Civ. P. 12(b) ("No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.") *with Blockowicz*, 630 F.3d at 566 (finding defendants waived their personal jurisdiction defense by merely asserting it in a footnote and proceeding to address the merits). Without proper service of

a summons or a waiver of service by the AHOA, the Court lacks jurisdiction and dismisses Plaintiffs' claims against it.

### b. Fair Housing Act Claims

Plaintiffs allege the Johnsons and the AHOA waged a campaign of constructive eviction in an effort to force Plaintiffs out of the neighborhood because the Johnsons perceived the Smalls to be Jewish. Plaintiffs bring their claims under subsections (a), (b), and (c) of 42 U.S.C. § 3604 and under 42 U.S.C § 3617 of the FHA. The Johnsons move to dismiss these claims, arguing that Plaintiffs rely on conclusory statements that at best establish a quarrel between neighbors, which is not covered by the FHA.

#### i. Section 3604(a)

Plaintiffs first claim Defendants violated § 3604(a) of the FHA, which makes it unlawful:

> To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

Plaintiffs allege the Johnsons have waged a campaign of constructive eviction against the Smalls, which falls into the "otherwise make unavailable" portion of the statute. The Johnsons argue Plaintiffs fail to state a claim under this subsection because they merely plead attempted constructive eviction, which the Seventh Circuit held is insufficient.

In *Bloch v. Frischolz*, 587 F.3d 771, 776 (7th Cir. 2009), the Seventh Circuit explained that § 3604(a) is largely designed to prohibit pre-sale or pre-rental discrimination, but the phrase "or otherwise make unavailable or deny" means the subsection also applies to "post-acquisition discriminatory conduct that makes a dwelling unavailable to the owner or tenant, somewhat like a constructive eviction." To show constructive eviction, a plaintiff "must show her residence is 'unfit for occupancy,' often to the point that she is 'compelled to leave.'" *Id.* at 778 (quoting

BLACK'S LAW DICTIONARY 594 (8th ed. 2004)). The Seventh Circuit noted that "constructive eviction requires surrender of possession by the tenant," and "[i]f the tenant fails to vacate within a reasonable time, she waives her claim for constructive eviction." *Id.* However, the opinion stopped short of saying that a plaintiff must vacate the premises to establish a claim of post-acquisition discrimination under § 3604(a). *Id.*

Nonetheless, the crucial fact that prevented § 3604(a) from applying in *Bloch* is also present here—Plaintiffs have remained at the 10396 property for years since the conduct that is alleged to have made the property unavailable. In *Bloch*, the plaintiff gave no reason why she failed to vacate and instead stayed put for over a year. *Id.* The Seventh Circuit held that, because the plaintiff was able to stay put for that long, there was "no possibility that a reasonable jury could conclude that the defendants' conduct rendered [the property] 'unavailable' to [the plaintiff.]" *Id.* Plaintiffs allege discriminatory conduct from July 2015 through May 2016. Plaintiffs did not file this suit until May 2018, and they do not allege they have vacated the 10396 property. Therefore, Plaintiffs fail to plead the 10396 property is unavailable, so the Court grants the Johnsons' motion with respect to Plaintiffs' § 3604(a) claim.

### ii. Section 3604(b)

In their second count, Plaintiffs allege Defendants violated § 3604(b), which makes it unlawful:

> To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

Like subsection (a), subsection (b) also applies to a limited range of post-acquisition conduct. *Bloch*, 587 F.3d at 779. *Bloch* noted two ways post-acquisition conduct can violate this subsection. *Id.* First, post-acquisition conduct can violate a "privilege of sale" if the conduct denies the owner or renter the right to inhabit the premises. *Id.* However, "this § 3604(b)

avenue is closed" when the plaintiff fails to show constructive eviction. *Id.* As noted above, Plaintiffs have not pleaded constructive eviction, so this avenue is closed to them as it was closed to the plaintiff in *Bloch*. *Id.*

The second way post-acquisition conduct can violate subsection (b) is when a homeowners association enforces discriminatory rules or applies neutral rules in a discriminatory way. *Id.* at 780. Homeowners association rules are terms and conditions of sale that continue to bind owners after the transaction is complete. *Id.* at 779-80. These rules fall squarely within § 3604(b), so they cannot be discriminatory pre- or post-acquisition. *Id.* Further, even if the rules are neutral, applying them in a discriminatory way still violates subsection (b). *Id.* at 780.

Plaintiffs fail to assert a claim under the second avenue of § 3604(b) because they do not allege any contractual connection between the Johnsons, the AHOA's rules, and the 10396 property. *Bloch* emphasized that the ongoing contractual relationship is the distinguishing fact that allows for potential liability under this subsection, which otherwise only regulates pre-acquisition conduct. *Id.* Plaintiffs do not claim the Johnsons are a party to Plaintiffs' contract with the AHOA, or that the Johnsons have any rights or authority to alter or enforce any AHOA rules under that agreement. Plaintiffs merely allege the Johnsons attempted to convince the AHOA to adopt a rule barring renting. Without any connection between the Johnsons and the continuing contract with the AHOA to abide its rules, § 3604(b)'s second avenue is also closed to Plaintiffs.

### iii. Section 3604(c)

Plaintiffs fail to state a claim under § 3604(c) because they have not alleged there were any discriminatory statements made in connection to a sale or rental. Subsection (c) makes it unlawful:

> To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

To present a claim under subsection (c), plaintiffs must plead: 1) the defendant made a statement, 2) the statement was made with respect to the sale or rental of a dwelling, and 3) the statement indicated a preference, limitation, or discrimination against the plaintiffs on the basis of their status within a protected group. *White v. U.S. Dept. of Hous. and Dev.*, 475 F.3d 898, 904 (7th Cir. 2007). Though oral discriminatory statements can fall within the rule, they must be "made in connection with the sale or rental of a dwelling." *Id.* (citing 24 C.F.R. § 100.75(b)).

Plaintiffs allege Ms. Johnson made discriminatory statements, but they do not claim Ms. Johnson made those statements in connection with any sale or rental. For example, Plaintiffs do not assert they were seeking to engage Ms. Johnson, who was a realtor, to help them find a dwelling. The mere fact that Ms. Johnson was a realtor does not mean every statement she makes is an advertisement connected to a sale or rental. Further, Plaintiffs do not address the Johnsons' arguments on this point in their response, amounting to a tacit acknowledgment that their pleading is insufficient. Therefore, the Court grants the Johnsons' motion with respect to Plaintiffs' § 3604(c) claim.

### iv. Section 3617

Plaintiffs' final federal claim is sufficient to withstand the Johnsons' motion to dismiss. The claim is based on § 3617, which states:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

Together, these sections prohibit discrimination that creates a hostile housing environment. *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 861 (7th Cir. 2018). To plead a hostile housing environment, plaintiffs must show "(1) [they] endured unwelcome harassment based on a protected characteristic; (2) the harassment was severe or pervasive enough to interfere with the terms, conditions, or privileges of [their] residency, or in the provision of services or facilities; and (3) that there is a basis for imputing liability to the defendant." *Id.* at 861-62.

Plaintiffs support their § 3617 claim by alleging the Johnsons "perceived" the Smalls to be Jewish and pointing to six incidents that happened between July 2015 and June 2016. Plaintiffs allege the Johnsons made multiple complaints to the AHOA, marked the property line in an unsightly way, put up a wall that blocked the Small's view, and tried to force the Smalls out by getting the AHOA to prohibit renting. As evidence of motive, Plaintiffs point to the May 28 incident in which Ms. Johnson repeatedly called Mr. Small a "Jew face." The Johnsons do not meaningfully dispute that there is a basis for imputing liability to them, but rather contend that the alleged harassment: (1) was not based on a protected characteristic; and (2) was not sufficiently severe or pervasive.

### 1. Protected Characteristic

The Johnsons first argue Plaintiffs fail to state a claim because Plaintiffs do not claim to be members of a protected class, only that they were perceived to be. Indeed, courts often list membership in a protected class as the first element of the prima facie case under § 3617. *E.g. Bloch v. Frischolz*, 587 F.3d 771, 783 (7th Cir. 2009); *East-Miller v. Lake Cty. Hwy. Dept.*, 421 F.3d 558, 563 (7th Cir. 2005). However, the Johnsons misunderstand the purpose of pleading a prima facie case in discrimination cases. Under the FHA, plaintiffs have the burden to show the

discrimination was intentional, and courts permit plaintiffs to use two methods to make this showing: 1) plaintiffs may show direct evidence of intentional discrimination, or 2) plaintiffs may create an inference of intent under the *McDonnel Douglas* test by pleading a prima facie case.[1] *East-Miller*, 421 F.3d at 563; *Kormoczy v. Sec., U.S. Dept. of Hous. & Urb. Dev.*, 53 F.3d 821, 823-24 (7th Cir. 1995). Plaintiffs do not plead they are members of a protected class under § 3617, so the Johnsons are correct that Plaintiffs fail to adequately plead intent through a prima facie showing under *McDonnel Douglas*. But Plaintiffs may satisfy their burden if they can show direct evidence of intent to discriminate.

Discriminatory intent does not require the discriminator to be correct in his assumptions about the victim's membership in a protected class. The purpose of the FHA is to "eradicate discriminatory practices within a sector of the Nation's economy." *Texas Dept. of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2511 (2015). With this purpose in mind, it would make little sense to sustain discriminatory intent simply because it was misplaced. Though the Seventh Circuit has not addressed this question, the Ninth and Fifth Circuits have permitted actions based on defendants' mistaken beliefs regarding the plaintiffs, albeit under different statutory contexts. The Ninth Circuit reviewed a § 1983 claim in which the plaintiff "was the target of discrimination based upon mistaken racial identity." *Est. of Amos ex rel. Amos v. City of Page*, 257 F.3d 1086, 1094 (9th Cir. 2001). Despite the fact the plaintiff was white, the court viewed the plaintiff as the defendants viewed him (Native American) because "discrimination is no less malevolent [when] it [is] based upon an erroneous assumption." *Id.* In

---

[1] The Seventh Circuit has moved away from rigidly separating the two methods, "recognizing that both methods of proof converge on the same fundamental question: could a reasonable trier of fact infer retaliation or discrimination, as the case may be?" *Castro v. DeVry U., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015) (collecting cases).

the Title VII context, the Fifth Circuit "focus[ed] on the alleged harasser's subjective perception of the victim" when the defendant operated on "ill-formed assumptions about its employee." *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 456 (5th Cir. 2013). Similarly, in a district court in this circuit, a defendant argued the plaintiff failed to meet his Rule 56 burden because the defendant discriminated against the plaintiff based on its mistaken belief that the plaintiff was Arab, when in fact, the plaintiff was Assyrian. *Boutros v. Avis Rent A Car Sys., LLC*, 10 C 8196, 2013 WL 3834405, at *7 (N.D. Ill. July 24, 2013). The court called the argument "as offensive as it is incorrect," and permitted the plaintiff to show intentional discrimination based on the defendant's perception. *Id.*

This comports with the Supreme Court's jurisprudence concerning who may bring a claim under the FHA. The FHA grants a private right of action to "aggrieved person[s]." 42 U.S.C. § 3613(a)(1)(A). The Supreme Court has repeatedly affirmed that the phrase "aggrieved person" reflects "a congressional intention to define standing as broadly as is permitted by Article III of the Constitution." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982); *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 109 (1979); *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972). The FHA prohibits "discrimination based on race, color, religion . . . ." *E.g.* 42 U.S.C. § 3604(c). A person who discriminates against a victim because of a mistaken belief about the victim's religion nonetheless discriminates based on religion in violation of the FHA. Permitting such intentional discrimination merely because it was misdirected runs afoul of the FHA's purpose of eradicating discriminatory practices within the housing market. *See Texas Dept. of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2511 (2015) (The purpose of the FHA is to "eradicate discriminatory practices within a sector of the Nation's economy.").

The next issue is whether Plaintiffs have sufficiently pleaded direct evidence that the Johnsons' motivation for the alleged incidents was an intent to discriminate against Jewish neighbors. "Direct evidence is that which can be interpreted as an acknowledgment of the defendant's discriminatory intent." *Kormoczy v. Sec., U.S. Dept. of Hous. & Urb. Dev.*, 53 F.3d 821, 824 (7th Cir. 1995). Circumstantial evidence of the defendant's intent is admissible. *Id.* But the evidence must be akin to a smoking gun, i.e. "evidence which, 'if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption.'" *Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1290 (7th Cir. 1997) (quoting *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir.1997)); *Jones v. GE Info. Servs.*, 3 F. Supp. 2d 910, 915 (N.D. Ill. 1998).

Plaintiffs' pleading on this point is sufficient with respect to the Smalls. Plaintiffs allege that on May 28, 2016, Ms. Johnson turned Mr. Small's attempt at friendly conversation into an anti-Semitic verbal attack in which she repeatedly called him "Jew Face." [Filing No. 35, at ECF p. 5.] While Plaintiffs do not allege Ms. Johnson admitted to harassing the Smalls because she thought they were Jewish, such toxic slurs nonetheless open a window into a person's mind and to the motivations for their actions. And while there may be little to connect these alleged statements to earlier and later alleged incidents, there is enough to survive the pleading stage.

However, Executives' claim must be dismissed. Though the FHA's definition of "person" includes LLCs, 42 U.S.C. § 3602(d), Plaintiffs do not plead any direct discrimination against Executives. Thus to bring a claim, Executives would need to plead third-party standing on behalf of the Smalls. For third party standing under the FHA, Executives must plead it suffered "a distinct and palpable injury." *S.-Suburban Hous. Ctr. v. Greater S. Suburban Bd. of Realtors*, 935 F.2d 868, 878 (7th Cir. 1991) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S.

363, 372 (1982)).  The complaint does not include any allegation of a palpable injury distinctly felt by Executives.  Therefore, the Court grants the Johnsons' motion regarding Executives' § 3617 claim.

### 2. Severe or Pervasive Harassment

To state a claim under § 3617, plaintiffs must plead harassment that is so severe or pervasive that "it objectively interferes with the enjoyment of the premises or inhibits the privileges of rental." *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 862 (7th Cir. 2018).  The defendant's harassment must amount to "interference," which "is more than a quarrel among neighbors or an isolated act of discrimination, but rather is a pattern of harassment, invidiously motivated." *Bloch v. Frischolz*, 587 F.3d 771, 776 (7th Cir. 2009) (internal quotations and citations omitted).  In making this determination, the Court looks to the totality of circumstances, "including the frequency of the discriminatory conduct, its severity, and whether it is physically threatening or humiliating rather than merely offensive." *Wetzel*, 901 F.3d at 862.  The inquiry is not a simple numbers game with a necessary minimum number of incidents.  *Id.*  Rather, the Court uses a sliding scale, accounting for both the severity of each incident as well as the frequency.  *Id.*  ("While isolated minor affronts are not enough, either a small number of severe episodes or a relentless pattern of lesser harassment may suffice.") (internal citations and quotations omitted).

As with intent, Plaintiffs plead just enough evidence of harassment to survive the Johnsons' motion to dismiss.  Plaintiffs allege six incidents in less than a year: 1) the Johnsons used unsightly stakes to mark the property line and later made it worse by connecting them with rope, 2) the Johnsons complained to the AHOA about landscaping stone on the 10396 property, 3) the Johnsons attempted to have the AHOA rules amended to prohibit renting, which would

have forced the Smalls out of the neighborhood, 4) the Johnsons complained to the AHOA and Fishers police about suspicious cars parked at the 10396 property, 5) the May 28, 2016, incident, in which Ms. Johnson called Mr. Small racist, accused him of FHA violations, and called him a "Jew Face," all in front of Mr. Small's friends and potential clients; and in which Mr. Johnson physically threatened Mr. Small, and 6) the Johnsons installed a large wooden wall roughly 13 feet from the Small's front porch, blocking their view. The Court assumes these incidents happened as alleged. *Teamsters Loc. Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 823 (7th Cir. 2014).

The Johnsons argue that illustrative cases regarding the kind of harassment § 3617 targets "involve firebombing, cross-burning, and other similarly overt acts of intimidation." [Filing No. 41, at ECF pp. 13-14 (quoting *Walton v. Claybridge Homeowners Ass'n, Inc.*, No. 1:03-CV-69-LJM-WTL, 2004 WL 192106, at *6 (S.D. Ind. Jan. 22, 2004), *aff'd*, 191 Fed. Appx. 446 (7th Cir. 2006))].] The Johnsons contend Plaintiffs' allegations only amount to a quarrel among neighbors with an isolated religious slur. The line between a pattern of invidious harassment and an ongoing quarrel is not always obvious. In this case, the allegations include religious slurs, threats of violence, efforts to oust Plaintiffs from their residence, complaints to the police, efforts to humiliate Plaintiffs in front of their friends and clients, and erecting a physical barrier that adversely affected Plaintiffs' enjoyment of their residence. In the Court's view, these allegations cross the line.

### c. State Law Claims

In addition to their FHA claims, Plaintiffs bring five claims based on Indiana law. First, they claim the Johnsons violated Indiana's ban on "spite fences" when they put up a wooden wall dividing their property from the 10396 property. Second, Plaintiffs allege the Johnsons

"tortiously interfered with Plaintiffs' quiet enjoyment of the Property at 10396."  Third and

fourth, Plaintiffs allege the Johnsons defamed the Smalls both *per quod* and *per se*.  Finally,

Plaintiffs assert a state law claim concerning whether the AHOA is required to turn over certain

documents.  However, the Court need not substantively address this final claim.  Plaintiffs assert

this claim only against the AHOA, and the Court previously dismissed all claims against the

AHOA for want of proper service.

### i. Spite Fence

Plaintiffs allege the Johnsons put up a "large wooden wall" between their property and

the 10396 property in violation of Indiana's prohibition on "spite fences."  Under Indiana Code

32-26-10-1, a "structure in the nature of a fence unnecessarily exceeding six (6) feet in height,

maliciously: (1) erected; or (2) maintained; for the purpose of annoying the owners or occupants

of adjoining property, is considered a nuisance."  An owner or occupant who is injured in their

comfort or enjoyment of their property that adjoins such nuisance may bring an action for: "(1)

damages in compensation for the nuisance; (2) the abatement of the nuisance; and (3) all other

remedies for the prevention of a nuisance."  I.C. 32-26-10-2.  The statute is "in derogation of the

common law, and must therefore be strictly construed."  *Wernke v. Halas*, 600 N.E.2d 117, 121

(Ind. App. 1992).  If the fence in question does not meet the strict requirements of the statute, it

is merely subject to the common law of nuisance, under which a fence is only a nuisance if it

encroaches on the adjoining landowner's property.  *Id.* (affirming the continued applicability of

*Giller v. West*, 69 N.E. 548, 549 (Ind. 1904)).

Despite the fact the statute was first enacted in 1909 and has not been substantively

amended, there are only three Indiana opinions analyzing the requirements of the statute: *Gertz v.

Estes*, 879 N.E.2d 617, 619 (Ind. App. 2008); *Wernke*, 600 N.E.2d at 121; and

*Meriweather*, 137 N.E. 32, 32 (Ind. App. 1922). These cases consistently outline the necessary elements of a claim under the spite fence statute: 1) the fence must exceed six feet, 2) the excessive height must be unnecessary, and 3) the fence must have been maliciously erected to annoy adjoining property owners or occupants. No matter how malicious or excessive a fence is, it does not violate the statute if it is six feet or less in height. *Wernke*, 600 N.E.2d at 121 ("[R]regardless of how unsightly the fence may be, with its attached vinyl strips, license plate, and orange construction site fencing, it cannot be a nuisance" if it "is no more than six feet tall."). On the other hand, a maliciously erected fence that is more than six feet tall is not cured by a local permit because the state law trumps municipal ordinances and regulations. *Gertz*, 879 N.E.2d at 619.

Plaintiffs' complaint is facially deficient because it fails to allege the wall exceeds six feet. In fact, Plaintiffs do not include any height allegation, only that the wall comes to roughly 13 feet from their front porch. Thus, the allegations fail to meet the statutory height requirement or the encroachment requirement of common law nuisance. For this reason, Plaintiffs' claim is dismissed.

### ii.  Tortious Interference with Quiet Enjoyment

Plaintiffs allege the Johnsons "tortiously interfered with Plaintiffs' [right to] quietly enjoy the Property at 10396." [Filing No. 35, at ECF p. 7.] The Johnsons contend that there is no such action under Indiana law. Plaintiffs respond by pointing to a single quote from a single case— *Terrell v. Rowsey*, 647 N.E.2d 662 (Ind. App. 1995): "[T]here exists a right to be free from unreasonable invasions of privacy, much as the right to be free from unreasonable invasions of physical security." [Filing No. 35, at ECF p. 7 (alteration in original) (quoting *Terrell*, 647 N.E.2d at 664).] Plaintiffs seize upon this quote to establish a right to enjoy property without

tortious interference from neighbors. However, no reasonable reading of *Terrell* supports such a conclusion. The issue in that case was whether an employer violated an employee's privacy interests when he opened the employee's unlocked car door, moved a blanket concealing a cooler, and opened the cooler. *Terrell*, 647 N.E.2d at 663-64. There had been complaints that the employee was drinking alcohol in his car on his breaks, and the employer found bottles of beer in the cooler and fired the employee. *Id.* at 663. To say the least, *Terrell* is inapposite, and Plaintiffs have failed to establish that tortious interference with quiet enjoyment is a cause of action under Indiana law. Therefore, the Court grants the Johnsons' motion with respect to this claim.

### iii.  Defamation *Per Quod* and *Per Se*

Plaintiffs allege that both Mr. and Ms. Johnson defamed Mr. Small during the May 28 incident. The basic elements of defamation under Indiana law are: "(1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages." *Kelley v. Tanoos*, 865 N.E.2d 593, 596-97 (Ind. 2007). Plaintiffs contend Ms. Johnson defamed Mr. Small, who like Ms. Johnson is a realtor, by calling him a "Jew Face" and accusing him of being a racist, violating the FHA, and violating the real estate agents' code of ethics, all in front of Mr. Small's friends who were potential clients.[2] Plaintiffs claim Mr. Johnson participated by threatening Mr. Small. Plaintiffs argue the claim meets the standards for both defamation *per quod* and defamation *per se*. Plaintiffs further allege that Ms. Johnson's employer—Defendant SGA—is vicariously liable for Ms. Johnson's conduct because it was her employer at the time she made

---

[2] Plaintiffs assert Ms. Johnson admitted to the statements by failing to deny them in her motion. However, that is not the way a Rule 12 motion works. Rule 12 motions concern potential legal insufficiencies of a pleading, not disputed facts. Regardless, the Johnsons included a denial in their motion. [Filing No. 41, at ECF p. 18 n.2.]

the statements.  The Johnsons' motion presents two arguments: 1) the alleged defamatory statements are opinions that cannot be objectively verified, and so are not defamatory as a matter of law, and 2) Plaintiffs failed to sufficiently plead damages because defamation *per quod* requires special damages and Plaintiffs are not entitled to general damages because they have not established defamation *per se*.  SGA's motion argues that Plaintiffs fail to plead that Ms. Johnson was acting within the scope of her employment, and therefore, fail to plead vicarious liability.

### 1. The Johnsons

A communication may be either defamatory *per se* or *per quod*.  *Kelley*, 865 N.E.2d at 596-97.  To be defamation *per se*, the statement must impute: "(1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct."  *Id.* at 596.  If the statement does not fall into one of those categories, the Court analyzes it as defamation *per quod*.  *See id.*  Plaintiffs who show defamation *per se* are entitled to presumed damages, where plaintiffs who show defamation *per quod* must prove special damages.  *Id.* at 597.

The analysis for determining whether a statement is defamatory is different depending on whether the statements are defamation *per se* or *per quod*.  For defamation *per se* to be actionable, "the words used must have defamatory imputation on their face.  The circumstances in which the statements were made have no bearing on whether the statements constitute defamation *per se*."  *Wartell v. Lee*, 47 N.E.3d 381, 385 (Ind. App. 2015) (emphasis omitted) (quoting *Big Wheel Rests., Inc. v. Bronstein*, 302 N.E.2d 876, 879 (Ind. App. 1973)).

For defamation *per quod*, a statement is defamatory if it tends "to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from

dealing or associating with the person." *Kelley*, 865 N.E.2d at 596. "For a statement to be actionable, it must be clear that it contains objectively verifiable fact regarding the plaintiff. If the speaker is merely expressing his subjective view, interpretation, or theory, then the statement is not actionable." *Meyer v. Beta Tau House Corp.*, 31 N.E.3d 501, 515 (Ind. App. 2015) (internal citation omitted). Whether a statement is defamatory is a question of law unless the Court determines the statement is susceptible to both a defamatory and non-defamatory meaning. *Melton v. Ousley*, 925 N.E.2d 430, 439 (Ind. App. 2010). The Court views the statement in context, giving it its "plain and natural meaning." *Gatto v. St. Richard Sch., Inc.*, 774 N.E.2d 914, 923 (Ind. App. 2002).

Plaintiffs' complaint does not specify which individual plaintiffs allege defamation. To the extent Ms. Small and Executives intend to assert defamation claims, Ms. Small's and Executives' claims are dismissed because Plaintiffs have not alleged any defamatory statements relating to Ms. Small or Executives. Likewise, the Court dismisses Mr. Small's defamation claim against Mr. Johnson because Plaintiffs have not alleged that Mr. Johnson made any defamatory statement, only that he was present and physically threatening during the May 28 incident.

Plaintiffs have not pleaded any facts to suggest that calling Mr. Small a "Jew Face" to his friends and potential clients was defamatory. First, it does not fall into any of the defamation *per se* categories. Second, there is no objective way to verify the veracity of the alleged statement. Third, "[w]hile racial slurs and epithets are contemptible and do not belong in a civil society, they are generally not defamatory in the absence of particular circumstances that make them so." *N. Ind. Pub. Serv. Co. v. Dabagia*, 721 N.E.2d 294, 303 (Ind. App. 1999). To be defamation, the epithets must lower the subject's esteem in the minds of the listeners. *Id.* "For example, if

calling [Mr. Small] a ["Jew Face"] was intended to mean and was understood to mean that he was a 'thief,' then the statement would be defamatory." *Id.* Plaintiffs have not pleaded any facts to suggest Mr. Small's friends understood "Jew Face" to impute some specific negative quality on Mr. Small's character, so Plaintiffs have failed to plead the statement was defamatory.

The statement that Mr. Small is racist is sufficient for a claim of defamation *per quod* but not defamation *per se*. Calling a person racist impugns their character, and contrary to the Johnson's argument, it is a statement of fact. *Taylor v. Carmouche*, 214 F.3d 788, 793 (7th Cir. 2000) ("[W]hether a given supervisor is a racist, or practices racial discrimination in the workplace, is a mundane issue of fact, litigated every day in federal court."). The Johnsons cite *Lovings v. Thomas*, 805 N.E.2d 442, 447-48 (Ind. Ct. App. 2004), to argue Ms. Johnson's statement is not defamatory as a matter of law. [Filing No. 41, at ECF p. 20.] But that case considered only whether similar statements constitute defamation *per se*; it did not consider defamation *per quod*. *Lovings*, 805 N.E.2d at 447. Further, the fact that the statement is alleged to have been made in front of Mr. Small's African American friends increases the possibility that it was harmful to Mr. Small's reputation. However, the statement is not defamation *per se* because it does not, by itself, impute misconduct in Mr. Small's occupation as a realtor or in any of the other categories.

Plaintiffs' allegation that Ms. Johnson accused Mr. Small of violating the FHA and the real estate agents' code of ethics are likewise sufficient to plead a defamatory statement under defamation *per quod*, but not *per se*. While the statements touch upon Mr. Small's profession as a realtor, the defamatory nature of the alleged statements depends on context. As the Johnsons point out, the FHA and real estate agents' code of ethics are both broad schemes that govern a wide range of behaviors. A violation could come from something as innocuous as late payment

of a license fee, or something sinister, like fraud or open refusal to work with minorities. Without additional information, the alleged accusations are not "so obviously and naturally harmful that proof of their injurious character can be dispensed with." *Baker v. Tremco Inc.*, 917 N.E.2d 650, 658 (Ind. 2009) (quoting *Levee v. Beeching*, 729 N.E.2d 215, 220 (Ind. App. 2000)). Rather, given the lack of clarity in the alleged statements, the potential for harm depends on how the statements were understood by Mr. Small's friends and, to a great extent, the fact that the friends were potential clients. Nonetheless, with this context in mind, Mr. Small has sufficiently pleaded *per quod* defamatory statements for the purposes of a motion to dismiss.

The next issue is whether Mr. Small properly pleaded damages. For defamation *per quod*, plaintiffs must plead special damages, i.e. "damages that are pecuniary in nature and that have been actually incurred as a natural and proximate consequence of the wrongful act." *Martino v. W. & S. Fin. Group*, 715 F.3d 195, 206 (7th Cir. 2013) (applying Indiana law) (quoting *Tacket v. Delco Remy Div. of Gen. Motors Corp.*, 937 F.2d 1201, 1206 (7th Cir.1991)). Pleading damages from defamation *per quod* is subject to a heightened standard for Rule 9(g), and requires something akin to an itemized list of specifically stated damages. *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003); *see Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) ("[The plaintiff] itemized losses that in his view flowed from defendants' statements; he identified specific business opportunities that had been available to him earlier but that, following the defendants' statements, were available no more. This is more than a general allegation of economic loss; it is an allegation that third parties have ceased to do business with him because of the defendants' action.").

The complaint merely pleads "mental and physical pain and anguish and other pecuniary and non-pecuniary damages." [Filing No. 35, at ECF p. 8, ¶ 46.] This is insufficient under Rule

9(g)'s elevated standard. Though Mr. Small alleges that the statements were made to potential

clients, he does not allege he lost any business, was fired, or suffered any particular injury. The

inclusion of mental and physical pain does not save the pleading. "Emotional and physical

harms are not special damages unto themselves, but rather are parasitic damages, viable only

when attached to normal (i.e., pecuniary) special damages." *Lovings v. Thomas*, 805 N.E.2d

442, 448 (Ind. App. 2004) (parenthetical in original) (quoting *Rambo v. Cohen*, 587 N.E.2d 140,

146 (Ind. App. 1992)). Without more detail regarding what the other pecuniary damages are and

how they were caused by the alleged defamation, Mr. Small's defamation *per quod* claims must

be dismissed.

In sum, Plaintiffs fail to plead defamation. The complaint does not establish defamation

*per se*, and while Mr. Small sufficiently pleads harmful statements under defamation *per quod*,

the claim nevertheless fails because he does not sufficiently plead damages.

### 2. SGA

Plaintiffs allege that, as her employer, SGA is vicariously liable for Ms. Johnson's

statements under *respondeat superior*. "Under Indiana law, vicarious liability will generally be

imposed upon an employer under the doctrine of *respondeat superior* where the employee has

inflicted harm 'while acting within the scope of employment.'" *Zander v. Orlich*, 907 F.3d 956,

959 (7th Cir. 2018) (quoting *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008)). "[A]n

employee acts within the scope of employment when performing work assigned by the employer

or engaging in a course of conduct subject to the employer's control." *Barnett*, 889 N.E.2d at

284 (quoting Restatement (Third) of Agency at § 7.07(2)). To be within the scope, "the injurious

act must be incidental to the conduct authorized or it must, to an appreciable extent, further the

employer's business." *Id.* at 283-84. However, employers generally are not liable for an act

done "on the employee's own initiative . . . with no intention to perform it as a part of or incident to the service for which he is employed." *Stropes by Taylor v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989).[3]

Plaintiffs plead no facts that suggest Ms. Johnson was acting within the scope of her employment when any of the alleged harassment occurred. They do not allege that SGA directed her to commit any of the alleged acts, that she was attempting to benefit SGA through the acts, that she was on the clock, or any other thing that would suggest she committed the act while furthering any of SGA's interests. The mere fact that she was a real estate broker and that the statements concern the FHA and real estate agents' code of ethics does not in any way imply that she was acting within the scope of her employment when she allegedly made the statements. Plaintiffs have presented no authority under which the Court can hold an employer liable for all acts of an employee simply because that employee is subject to a code of ethics. Therefore, the Court grants SGA's motion to dismiss Plaintiffs' claims against it.

## IV.    Conclusion

Plaintiffs' claims are, to a great extent, insufficiently pleaded. Perhaps some claims can be salvaged by more careful pleadings, though other claims likely cannot be. The Court grants the AHOA's motion [Filing No. 42] and SGA's motion [Filing No. 38]. As for the Johnsons' motion [Filing No. 40], the Court grants it in part and denies it in part. Only one claim survives Defendants' motions to dismiss: the Smalls' 42 U.S.C. § 3617 claim against the Johnsons. Therefore, the following claims are dismissed:

- Count I – 42 U.S.C. § 3604(a)
- Count II – 42 U.S.C. § 3604(b)
- Count III – 42 U.S.C. § 3604(c)

---

[3] However, employers may be liable for such acts by an employee if the employer owed the victim a nondelegable duty. *Id.* at 250.

- Count IV – I.C. § 32-26-10-1 (spite fence)
- Count V – 42 U.S.C. § 3617, but only in regard to Executives' claim
- Count VI – Tortious Interference with Quiet Enjoyment
- Count VII – Defamation *per quod*
- Count VIII – Defamation *per se*
- Count IX – I.C. § 32-25.5-3-3 (access to the AHOA's records)

The Court dismisses these claims without prejudice. Plaintiffs may amend their complaint to remedy its shortcomings, if they can, within 14 days, but if they do so, they shall be mindful of the limitations set forth in Rule 11(b).

Date: 3/21/2019

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record by email.